STATE *vs.* LLOYD SUTTON & another.

In any indictment or other criminal proceeding where there is more than one defendant, all the defendants taken collectively, and not individually, are entitled to challenge peremptorily one juror out of every six that are called for the trial of the cause.

The master and mate of a steamer were jointly indicted for manslaughter caused by a collision. It was in evidence that they were both in the pilot-house before and at the time of the collision. *Held,* that a motion to direct the jury to return a verdict of not guilty as to the mate, because he was subject to the orders of the master and must be presumed to have acted under his orders, was properly refused, as the commands of the master would not justify the mate in the commission of a criminal offence, or in keeping the vessel on a course that endangered life.

INDICTMENT against Lloyd Sutton and Paul Capron for manslaughter. At the trial of the indictment at the September Term, 1870, of the Supreme Court for this county, before Mr. Justice Durfee and a jury, a verdict of guilty was returned by the jury against both defendants, whereupon they alleged exceptions, the substance of which is stated in the opinion of the court.

*Payne & Gardner,* for the defendants, cited Bishop on Criminal Procedure, vol. 1, § 967, and Rev. Stat. chap. 172, § 33, and chap. 222, § 17, to the point that each defendant had the right of peremptory challenge of not exceeding one in six jurors, and Abbott on Shipping (5th Am. ed.) 233 ; 1 Parsons on Maritime Law, 463, and 1 Conklin's Adm'r Juris. 313–322, to the point that the jury should have been directed to return a verdict of acquittal as to Capron, after the defence proved that he was mate, and Sutton was captain, and that both were in the wheel-house at the time of the collision, there being no evidence that they were acting in concert in directing the steamer.

*Sheffield,* for the state, *contra,* contended that in the provisions in Rev. Stat. chap. 172, § 33, that either party in a civil

action or in a criminal proceeding might challenge peremptorily any jurors not exceeding one in six, the words " either party " should be construed as meaning " either side," or persons engaged against each other, or as one of two litigants, citing Bouvier's Law Dictionary, definition of word " party ; " that the uniform construction of the statute in this manner should have weight. *Packard* v. *Richardson et al.* 17 Mass. 144 ; and that inasmuch as it would not only be inconvenient, but difficult to obtain juries in cases where there were several plaintiffs or defendants, if the construction of the statute contended for by the defendants should prevail, the *argumentum ab inconvenienti* should be weighed. *Langdon* v. *Potter et al.* 3 Mass. 221 ; *Ayers* v. *Knox*, 7 Mass. 310.

BRAYTON, C. J.    The indictment in this case in substance charges, that the defendants, Lloyd Sutton, then the captain of a certain steamboat called the Whatcheer, and Paul Capron, then the mate of said steamboat, said steamboat being then navigated upon the waters of Narragansett Bay, did feloniously and wilfully propel and drive the said steamboat, and cause the said boat to be propelled, forced, and driven against and upon one George Cook, and thereby gave unto said Cook a mortal wound, whereof he died, and did then and there him the said George Cook, in manner and form aforesaid, feloniously, unlawfully, and wilfully kill and slay.

The defendants were arraigned and put to plead, and severally pleaded not guilty.    They were put upon trial together.    Before the empanelling of the jury to try the cause, the defendants claimed the right for each to challenge peremptorily two jurors of the twelve called, and to challenge one out of every six that might be called.    The court ruled that the defendants, both, were entitled to two peremptory challenges only.    This ruling is now alleged for error, and is made a ground for a new trial.

Peremptory challenges were allowed at the common law in capital cases, only *in favorem vitæ*.    The number originally allowed, was thirty-five.    This was at a later period reduced to twenty, and such was the law here down to the passage of the act hereinafter referred to.    No peremptory challenges were allowed in offences less than capital, nor were any such allowed in any civil case.    In order to remedy what was deemed to be an

evil, considering the large number allowed to be challenged without assigning any cause, and to enable parties in lesser offences and in civil cases to have in a limited degree this right of challenge, by section 33 of chapter 172 of the Revised Statutes, it was provided, that "either party, in a civil action, or in any criminal proceeding, may, at or before the time when the jury is called for the trial of the cause, challenge, in writing, addressed to the clerk of the court, any jurors not exceeding one in six, without alleging or showing any cause therefor;" and by section 17 of chapter 222 of the Statutes it was enacted that "no peremptory challenge to jurors shall be allowed to any person indicted and tried for either of the crimes mentioned in the twelfth section of this chapter, or for any crime or offence, other than as are allowed by law in all cases civil or criminal."

The crimes mentioned in section 12 were treason, murder, robbery, rape, arson, and burglary, all formerly capital offences, so that in none of these could peremptory challenges be made, except as provided by section 33 of chapter 172 of the Revised Statutes. Crimes of every degree and all civil causes were put upon the same footing, and challenges given to either party in all alike.

The statute allowing peremptory challenges as it now stands, gives the right to challenge one juror out of every six in all civil cases, to either party, plaintiff or defendant, and there are but two parties. However numerous the defendants may be, they are together but one party, and so of plaintiffs. Together they may challenge one in six of the jurors called, and no more.

It was so in regard to peremptory challenges at common law. The right was not given to each person, but to the parties defendant capitally charged, and if more than one person, they were to join in the challenge. *Charnock's case*, 3 Salk. 81.

It is quite evident that were the challenges allowed to each person, were there as many as six of them, every juror called might be challenged, and it would be impossible to empanel a jury.

We think the ruling furnished no ground for a new trial, and is not erroneous.

After the government had submitted their testimony and rested their case, the defendants moved the court to direct the jury to

return a verdict of not guilty, assigning as a reason that there was no evidence that either defendant was in charge of the steamer at the time of the fact charged. This the court refused to do, being of opinion that there was evidence for the jury to weigh. Under these circumstances the court could not properly direct a verdict, and it can be no ground for a new trial that they did not. The defendants, had they declined to put in any evidence in defence, might have submitted their case upon the evidence of the state, and were the evidence not sufficient to warrant a conviction, the jury would probably have returned a verdict of not guilty, and had they returned a verdict of guilty against the defendants, they might, as they do now, move for a new trial because the verdict was against the evidence.

The court having denied the motion of the defendants, they entered upon their defence, and put in evidence upon the absence of which their motion was based, by proving that Sutton was the master of the steamer, and Capron the mate, and that they were both in the wheel-house before and at the time of the collision, and they now moved that the court direct the jury to return a verdict of not guilty as to Capron, the mate, assigning as a reason that he as mate was subject to the orders of the master, and must be presumed to have acted from his orders. This motion was also refused, because the commands of the master would furnish no justification for the commission of any criminal offence, nor could the servant, the mate at the wheel, excuse himself, if, seeing that life was in danger by keeping the vessel on her course, he disregarded it by command of another, and suffered the fatal consequences to follow without an effort to prevent them.

The next ground for a new trial is a sentence taken from the charge to the jury. The sentence is not fortunately expressed, and doubtless might mislead if isolated from its context. But we do not think the court, in uttering it, meant to do more than reaffirm the ruling already made, that the relation of inferior and superior existing between the defendants was not necessarily and of itself a ground of acquittal for the inferior. It is plain the court did not mean to say that this relation was not a circumstance to be considered by the jury in connection with other circumstances, for the contrary was said in that part of the charge

which immediately preceded, and the jury were very fully instructed that they were to consider, in passing upon the question of the guilt of Capron, the fact that he was a subordinate, and as such bound to obey his superior, in so far as he could without violating the law. It is also quite plain that the counsel for the defendants, in listening to the charge, did not suppose the sentence in question afforded any new ground of exception, for they did not then express any dissatisfaction with it. It is hardly reasonable to suppose that the defendant Capron can have been prejudiced by an expression which did not when it was uttered, and when the impression which the jury would be likely to receive from it would be most obvious, attract the attention of his counsel as prejudicial to him. Indeed, the fact that no exception was then taken is of itself à ground for refusing a new trial; but for the reasons suggested, we do not think that, in justice to the defendant Capron, any new trial is required on this ground. The material ground for a new trial, therefore, is the sixth, namely, that the verdict is against the evidence in the case.

Without going into a detail of the evidence submitted by the state and by the defendants to the jury, we may say that in regard to Sutton, the master of the steamer, it appears from the evidence that he was in the wheel-house, where every proper direction might be given, and where he might also act if his orders were not obeyed to the letter. The jury might well judge if they found the collision was from gross negligence, that the master was chargeable with it ; and the jury might well enough have found that the collision did take place in consequence of gross mismanagement of the steamer, in neglecting to change the course of the vessel until it was too late to avoid the disaster. Capron, though he was not the master, yet had the conduct of the steamer. He was at the wheel to direct her course. He was bound to be vigilant, to watch and to guard against any danger, to avoid any collision, either to endanger the vessel or her passengers or others sailing upon the bay, upon her track or across it. This was his especial duty. The jury must have been satisfied that he saw the danger before him ; that had he been commanded, his duty in the emergency would not allow him to obey ; and thus he had no sufficient excuse for keeping on his dangerous course. And had he attempted to change the course of the ves-

sel against the will of the master, it must have been made apparent to some one or more on board.

We cannot say the jury did not carefully weigh all the evidence upon this point, nor can we see that they must or ought to have had reasonable doubt of the guilt of the defendants.

*Exceptions overruled. Motion for new trial denied.*